Commonwealth ex rel. Goodman *v.* Delara, Appellant.

450

Argued June 21, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Norman P. Zarwin,* with him *Zarwin, Baum, Arangio & Somerson,* for appellant.

*Maurice Freedman,* with him *Robert H. Arronson,* and *Herbert H. Hadra,* for appellee.

OPINION BY SPAULDING, J., September 21, 1971:

This is an appeal from an order directing appellant Hilda Delara to pay her former husband, appellee Hy-

man Goodman, $15 per week for the partial support of their two minor children. The order was entered on January 27, 1971, by the Honorable Emanuel W. BE-LOFF of the Court of Common Pleas, Family Division, Philadelphia County.

The parties married in 1960 and were divorced in 1968, following a two year separation. Their two children, aged eight and nine, have resided with appellee since the separation occurred in 1966. This case arose on petition by appellee for partial support of the children.

Appellee is a bartender who works mostly evening hours and earns between $120 and $140 per week after taxes. He owns a 6 room ranch house in Philadelphia, where he and the children reside. Appellant works as a waitress near her apartment, in northeast Philadelphia, which she shares with her 73 year old, widowed, mother. She earns $25 a week in salary plus approximately $50 to $60 a week in tips.[1] Appellant testified to having expenses of $83 a week, including: rent $25, automobile payments and expenses $21, food $15, clothing $5, and other expenses totaling $17.

At the time of their separation in 1966, both appellant and appellee were working. The children were cared for during the day by a baby-sitter, whose services cost $60 weekly. Upon separating from her husband, appellant voluntarily gave him $50 per week, which enabled him to retain the baby-sitter. However, five months later, when appellant lost her $150 a week seasonal job as a waitress at a country club, she stopped making these payments as she could no longer afford them. Appellee retained the baby-sitter for a little over

---

[1] Appellant introduced her 1969 Federal income tax return which indicated a gross earnings of $1964 for that year. Her mother receives $113 a month social security, of which she contributes $50 per month towards the apartment rent.

a year, at his own expense, but finally he no longer had sufficient funds for this service. Since that time, appellee has had first one and then another of his married sisters live with him and care for the children. The sister presently residing with appellee and his children has her husband stay with her at appellee's home several days each week. However, as she now desires to return to her apartment and tend to her own affairs, the present action was filed. Appellee sought funds from his ex-wife to pay for a baby-sitter for the children, alleging that his own earnings are insufficient. The court below ordered appellant to pay him $15 a week from the $80-$85 she earns, despite her own uncontradicted living expenses of $83.

It is well recognized that at common law a husband alone had the obligation to support his children. *Schwab Adoption Case*, 355 Pa. 534, 540, 50 A. 2d 504 (1947) ; *Huffman v. Huffman*, 311 Pa. 123, 125, 166 A. 570 (1933). *Huffman* held that a father's primary responsibility for the support of his minor children would only pass to the mother in the event of his incapacity or death and if she was financially able to care for them. The duty of a mother to support her children is now provided by statute: Act of June 24, 1937, P. L. 2045, §3, as amended, 62 P.S. 1973(a) provides, inter alia: "The . . . wife, . . . and mother of every indigent person, whether a public charge or not, shall, if of *sufficient financial ability*, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct." (Emphasis added.)

The application of this statute to compel a mother to pay support for her children, who are in custody of an employed ex-husband, is a question of first impression in the appellate courts of this Commonwealth. However, we do not reach this question, since the finan-

cial circumstances of the mother do not justify an order against her under a proper interpretation of the statute.[2]

The trial judge found that appellee's income was far from adequate to pay for a baby-sitter to care for the children while he was at work. Thus, the trial judge properly concluded that the children, although not public charges, were nevertheless "indigent"[3] under the statute. The question thus becomes whether the trial court erred in holding that appellant had "sufficient financial ability" to pay the amount of the order. We hold that in these circumstances the order was not within appellant's financial ability.

It is well established in Pennsylvania that any order for support must be fair and not confiscatory. The purpose of such an order is the maintenance and welfare of the children, not the punishment of the parent, and the amount of the order must be justified by the parent's present earning ability, making due allowance for his own reasonable living expenses. *Commonwealth ex rel. Jacobson v. Jacobson,* 188 Pa. Superior Ct. 433, 146 A. 2d 91 (1958); *Commonwealth v. Wingert,* 173 Pa. Superior Ct. 613, 98 A. 2d 203 (1953). The issue of credibility concerning appellant's income was certainly for the court below. However, in the instant case, where "on the surface there was ground for suspicion of other income or resources, yet there was no

---

[2] We also do not reach the question of what effect, if any, the recently adopted amendment to the Constitution of the Commonwealth, providing that: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual," Pa. Const., Article One, §27 (1970), has in such cases.

[3] *Commonwealth ex rel. Home for the Jewish Aged v. Kotzker,* 179 Pa. Superior Ct. 521, 118 A. 2d 271 (1955), defined "indigent" as meaning not completely destitute, but rather without "sufficient means to pay their care and maintenance themselves."

proof of them . . . the court's order, to the extent that it rests upon speculation," amounts to reversible error. *Commonwealth ex rel. Baylinson v. Baylinson,* 191 Pa. Superior Ct. 51, 54, 155 A. 2d 203 (1959).

Here, the trial court did—speculate as to appellant's income. The court stated that: "I have no accurate way to know what she makes" and "[s]omewhere along the line I have to be the judge, willy-nilly, and make a decision". However, as in *Baylinson,* supra, there is no evidence that appellant had any income except that to which she testified. Here too, as in *Baylinson,* all of the evidence introduced by appellant as to her earnings, including an income tax return, called for rebuttal if appellee was unwilling to accept it as true. Appellee produced no testimony which discredited this evidence.[4] The trial court erred in ordering appellant to pay $15 per week support, an amount which the uncontradicted evidence indicated was in excess of her financial ability to pay.

The order of the court below is reversed.

---

[4] Appellee's testimony, that in 1966 appellant earned more per week than he did, was irrelevant to her present earnings, as was a vacation she had taken several years prior to this action.