## Brown v. Hall

*Richard C. Angino*, for plaintiff.
*Richard C. Snelbaker*, for defendant.

SHEELY, *J.*, January 24, 1983 — The parties, formerly husband and wife, entered into a separation agreement on October 24, 1973, which provided that after the divorce was finalized, defendant (husband) would pay $90 each week "for the support of the two minor children." Defendant fell behind in these payments and obtained a court order reducing the support payments to $80 each week;

he subsequently had this obligation reduced even further, to $55 each week.

Plaintiff (wife) appealed this reduction; upon reversal and remand,[1] the support obligation was increased to $65 each week. The plaintiff again appealed, but the order was affirmed.[2] She then appealed to the Pennsylvania Supreme Court. In addition, the plaintiff sought to have the 1973 separation agreement specifically enforced.[3] Specific performance was granted,[4] exceptions dismissed, and the decision affirmed by the Superior Court. Defendant appealed from the Superior Court's decision.

The Supreme Court consolidated the two appeals,[5] affirmed the Superior Court's affirmance of specific performance,[6] and vacated the Superior Court's affirmance of the $65 weekly support order.[7]

The parties are now before the court regarding defendant's obligation of child support under the separation agreement. In addition, plaintiff seeks interest on the amount of arrearages owed by defendant, as well as the costs of her appeals.

---

1. Commonwealth ex rel. Hall v. Hall, 243 Pa. Super. 162, 364 A.2d 500 (1976).

2. At 259 Pa. Super. 214, 393 A.2d 794 (1978).

3. Brown v Hall, 27 Cumb. L.J. 340 (1977).

4. The chancellor found that the parties intended the separation agreement to govern the amount of child support after the divorce, so that the amount of support would not be subject to future reductions by the court.

5. 495 Pa. 635, 435 A.2d 859 (1981), Justice Larson filed a concurring and dissenting opinion.

6. 261 Pa. Super. 395, 395 A.2d 960 (1978).

7. 259 Pa. Super. 214, 393 A.2d 794 (1977).

## FINDINGS OF FACT

1. Plaintiff, Ruth A. Brown (formerly Ruth A. Hall) and defendant, Larry E. Hall, were formerly husband and wife.

2. The parties had two children during their marriage; David B. Hall, born March 24, 1961, and Barbara A. Hall, born March 18, 1969.

3. The parties separated in early 1972, and entered into a separation agreement on October 24, 1973. This agreement provided for weekly support of plaintiff and children of $105, medical insurance, and insurance on defendant's life for the protection of the minor children. Upon finalization of the divorce, the weekly payment was reduced to $90 "for the support of the two minor children."

4. The parties were divorced on January 7, 1974. Both children were minors at this time.

5. The parties' son reached his majority on March 24, 1979, and graduated from high school in May, 1979. Defendant paid the full $90 support until his son graduated from high school, at which time defendant reduced his payments to $45 weekly.[8]

6. Defendant testified that he understood the support provision of the agreement to mean that $45 was for each child, and that upon one child's reaching majority the obligation to support that child ceased.

7. The Pennsylvania Supreme Court held, 495 Pa. 635, 435 A.2d 859 (1981), that the separation agreement was a separate contractual obligation which defendant was required to perform, and was not merged into a court order reducing the amount

---

8. All Notes to Testimony are taken from the transcript of proceedings of June 16, 1982.

of weekly support to be paid by defendant for his children.

## DISCUSSION

Plaintiff contends that paragraph 4 of the separation agreement, which states in relevant part:

Husband will pay to wife, after the divorce action has been finalized, the sum of $90 per week for the support of the two minor children is to be interpreted as meaning that defendant's obligation of paying $90 each week was to continue until *both* children reached majority. Defendant denies this interpretation, and asserts the position that his duty continues only during *each* child's *minority*. His duty was to pay $45 each week for each child, and upon his son's majority, the obligation to pay the son's $45 ceased. He claims, therefore, that his duty to pay exists only to the extent of $45 each week for his minor daughter, and *not* $90 each week until she reaches majority.

Plaintiff argues that the agreement did not expressly divide the support into two equal amounts, i.e., $45 for each child, but rather provided for a single sum of $90 to be used for both children *or* either child as their needs arose. She further argues that paragraph 6 of the separation agreement, which requires defendant to maintain a life insurance policy to "be continued until the children are no longer minors and in need of support," remains viable for the same length of time as paragraph 4. The actual insurance policy held by defendant provides for payment to *both* children until the youngest reached majority, and plaintiff claims that the weekly support payments must follow the same payment trend. Defendant, however, argues that his duty to pay support applies only during the *minority* of each

child, and if plaintiff had expected the full $90 amount to continue to continue for just *one* child, she should have bargained for that provision.

The issue here involves the intention of the parties in the words "for the support of his two *minor* children." (Emphasis added.) Defendant testified that it was his understanding that the paragraph 4 requirement of $90 payments actually represented $45 payments for each child, and that upon each child's majority, the obligation for that child ceased. Defendant further testified that he ceased the $45 payments for his son after the son reached his majority and subsequently graduated from high school.

The precise issue of whether support payments are to continue in full until *all* of the children reach their majority or are to be proportionally diminished as each child reaches his majority was resolved by this court in Badger v. Badger, No. 41 Equity 1978 (Cumb., filed December 21, 1979). The court held that the father *was* justified in prorating his support payments among his three children and reducing the total support payment by one-third as each child reached majority. The father's understanding of this agreement[9] was held to be "a perfectly reasonable and natural understanding of the language of the agreements, and, indeed, to be the true intention of both parties at the time the agreements were entered into." *Id.* at 10. Furthermore, the court stated that the argument that full payments must continue until all the children reach majority is an "unusual one," *id.* at 9, and should have been expressly written into the agreement if it had been intended.

---

9. The agreement required the father to pay $209 semimonthly "for and on account of the support of his minor children."

"It is the duty of this court . . . to adopt that interpretation of the agreements which ascribes the most reasonable, probable, and natural intent of the parties' language in view of the surrounding circumstances and purposes of the contracts. Wiegand v. Wiegand, 349 Pa. 517, 37 A.2d 492 (1944); Hild v. Dunn, 310 Pa. 289, 165 A. 288 (1933)." *Id.* at 9.

The words of the present agreement, "for the support of the two minor children," are to be interpreted as to their natural meaning and common acceptance unless it appears that the parties intended otherwise. Huffman v. Huffman, 311 Pa. 123, 166 A. 570 (1933); Badger, supra, at 8. The import of the meaning *"minor* children," along with defendant's testimony that he understood that his duty to support each child ceased when the child reached majority, is that the support obligation ran only as long as the child was a minor. Further, the fact that the *actual* insurance policy provided payments until both children reached majority does not affect the interpretation of paragraph 4. Defendant, therefore, was under no duty to continue the $90 payments subsequent to his son's reaching majority and graduating from high school; he is now obligated only to the extent of $45 weekly for the support of his minor daughter.

Plaintiff requests her appellate costs, including prothonotary costs and printing costs for both the Superior Court and Supreme Court appeals, and also requests interest to be assessed against the amounts owed by defendant.

Plaintiff is entitled to her appellate costs under Pa. R.A.P. §§2741(2)(3), which allow the costs of printing briefs and reproducing records, and other taxable costs to the party prevailing on the *final* judgment. (Emphasis added.) See Morris v. Peckyno, 207 Pa. Super. 217, 217 A.2d 807 (1966);

Matthews v. Tyrone Coal Co., 74 Pa. Super. 588 (1920). A hearing will be held to determine the actual amounts paid for these costs.

Plaintiff is also entitled to interest on the amount of support arrearages owed by defendant under 42 Pa. C.S. §8101. Such interest is to be computed from July 21, 1977, the date the decree nisi ordering defendant to perform under the separation agreement was entered.[10] Although no interest was assessed against the arrearages at that time because defendant's liability had not previously been determined with any certainty, his liability was ascertained from the July 21, 1977 date onward[11] Plaintiff is also entitled to interest on the appellate costs originally awarded on June 21, 1977, as the amount was also certain from that date forward. Interest runs from the judgment date, and not from the date of an appellate court affirmance of the original judgment. Interest is not suspended during an appeal. Watson v. McManus, 223 Pa. 583, 72 A. 1066 (1909); Swindell-Dressler Co. v. PennDOT, 50 Pa. Commw. 464, 413 A.2d 38 (1980); Koolvent Aluminum Awning Co. of Pittsburgh v. Pittsburgh, 192 Pa. Super. 650, 162 A.2d 256 (1960).

In view of the above discussion, we hereby make the following

## CONCLUSIONS OF LAW

1. The parties' son, David B. Hall, reached his majority on March 24, 1979, and graduated from high school in May, 1979.

---

10. Brown v. Hall, 27 Cumb. L. J. 340 (1977)

11. Brown v. Hall, 28 Cumb. L. J. 22 (1977). "Defendant's obligation was not so certain that the court believes he should be charged interest on the amounts it has declared past due under the agreement. In the future our decision might be different. The liability has been determined and the defendant will not have the benefit of genuine uncertainty."

2. Defendant is obligated, under the separation agreement of October 24, 1973, to pay $45 each week for the support of his minor daughter, Barbara A. Hall, until she reaches majority or graduates from high school, whichever is later.

3. Defendant, in addition to the $4,600 arrearages as of July 12, 1977, is in arrears on the support payments in the amount of $3,295, which consists of $1,320 from July 12, 1977 to March 13, 1979; $300 from March 20, 1979 to June 5, 1979; and $1,675 from June 12, 1979 to December 29, 1981. His payments from January 5, 1982 to June 6, 1982, are not in arrears.

4. Defendant is to pay interest on the arrearages from the dates the various payments were due, beginning on July 21, 1977.

5. Plaintiff is entitled to appellate costs which are to be ascertained at a future hearing.

6. Plaintiff is entitled to interest on the original appellate costs in the amount of $431.16 awarded on July 12, 1977, said interest to run from that date.

## DECREE NISI

And now, this January 24, 1983, in accordance with the adjudication filed this date, it is ordered, decreed and directed that,

Defendant, Larry E. Hall, shall pay $45 weekly for the support of Barbara A. Hall until she reaches majority or graduates from high school, whichever is later.

Plaintiff is entitled to a judgment against defendant for arrearages owed to December 29, 1981, on the principal sum of $7,895. In addition, plaintiff is entitled to interest on the arrearages from the various dates the payments were due, said interest to commence on July 21, 1977.

At the request of plaintiff, the court will hold a hearing to permit plaintiff to offer proof of sums paid for appellate proceedings.

Plaintiff is entitled to interest on the sum of $431.16 from July 21, 1977 to date, said sum of $431.16 being appellate costs awarded by the opinion of the chancellor on July 21, 1977.

Exceptions may be filed by either party within ten days after notice by the prothonotary. If no exceptions are filed, upon praecipe, the prothonotary shall enter the decree nisi as the final decree.