457 A.2d 98

## COMMONWEALTH of Pennsylvania ex rel. Judith SCANLON,

v.

## George SCANLON.

### Appeal of Judith SCANLON.

Superior Court of Pennsylvania.

Argued Feb. 18, 1981.

Filed Feb. 18, 1983.

34

Robert G. Rosen, Lansdale, for appellant.

Dominick Lockwood, Easton, for appellee.

Before PRICE *, MONTEMURO and VAN der VOORT, JJ.

PRICE, Judge:

George Scanlon, appellee, filed a petition for modification from a support order entered on October 26, 1979. By the terms of the order, Mr. Scanlon was to pay $150.00 a week for the support of his two children and $25.00 a week to Judith Scanlon, appellant, for her support. On June 10,

---

\* Died Jan. 30, 1983. Decision was reached prior to the death of Judge Price.

1980, the Honorable Richard D. Grifo filed an order removing Mrs. Scanlon from the support order and lowering the amount of support for the children to $113.00 a week. Mrs. Scanlon appeals from the part of the order lowering the amount of support for the children.

The facts of the case are as follows. Mrs. Scanlon filed a Petition for Support against Mr. Scanlon on February 2, 1979 seeking support for herself and the parties' two minor children. A hearing was held before the Domestic Relations Division of Northampton County on March 7, 1979. At the time of the hearing, Mr. Scanlon was employed as a center manager for United Parcel Service, his employer for the past ten years. His income was certified by his employer at a gross pay of $505.00 per week, with a net of $384.00 per week. No agreement was reached at this hearing and the matter was set to be listed for trial.

Negotiations between the parties continued and the trial date was postponed by agreement. As a result of these negotiations, Mr. Scanlon agreed to pay $175.00 a week, the amount recommended by the support office. This agreement was executed by the parties on September 18, 1979. The parties' residence was sold the same day and Mrs. Scanlon and the two children moved to Lansdale, Montgomery County where Mrs. Scanlon grew up. On September 19, 1979, Mrs. Scanlon began her employment with McNeil Laboratories. On October 26, 1979 the Court below entered its order in support directly along the lines set forth in the agreement.[1]

Mr. Scanlon testified that he signed the agreement (of September 18) and reviewed it with his attorney. (R. 76a). Specifically, the agreement provided that the sum of $175.00 a week would be paid by Mr. Scanlon until the divorce was completed. After the divorce, the sum would decrease to $150.00 a week as support for the two children. This order also provided that the amount ordered for the

1. Mr. Scanlon was to appear before the court and enter into the agreed Order but he failed to do so. However, the order was entered by stipulation of counsel.

children was to remain in full force and effect for three years or until February 2, 1982, "regardless of any change in circumstances of either party." (R. 44a).

Mr. Scanlon did not make the weekly payments as agreed. In fact, he only made one of the payments until the court issued an order attaching his wages on November 30, 1979. (R. 47a–49a). At the time of the entry of the Order of Attachment, and also at the time of the hearing on June 5, 1980, Mr. Scanlon was in arrears $1750.00.

No appeal was taken from the order of the court of October 26, 1979. However, in March of 1980, Mr. Scanlon filed a petition to reduce support. The basis for this petition was that the order of the court was too great and that Mrs. Scanlon was now working full time.

Pursuant to the Petition for Modification, a conference was held before the Domestic Relations Section on May 7, 1980. Mrs. Scanlon's income was certified from her employer at $149.00 per week. Mr. Scanlon's income had increased by $20.00 a week in gross, but for some reason his certified net income was not adjusted appropriately. The support officer made a new recommendation which Mrs. Scanlon rejected.

A hearing was held on June 5, 1980 before the Honorable Richard D. Grifo. After the support officer reported the findings of the support office to the Court, Mrs. Scanlon's counsel moved that the court refuse to proceed with the Petition to Reduce Support until such time as the arrears had been cleared citing *Commonwealth ex rel. Goodwin v. Goodwin*, 413 Pa. 551, 198 A.2d 503 (1964). (R. 67a). The lower court refused the motion. (R. 70a). Mrs. Scanlon agreed that she should be removed from the support order and the hearing proceeded as to the issue of child support.

Mr. Scanlon's direct testimony was very brief.[2] (R. 70a). Basically he stated that he had expenses of $740 a month

2. Mr. Scanlon's direct testimony consisted of the following:
   GEORGE F. SCANLON, sworn.
   DIRECT EXAMINATION BY [APPELLEE'S ATTORNEY]:
   Q. Will you just tell the Court what your financial problem is.

and that after support was deducted he was only clearing $620, and that he had no other income.

Under cross-examination, it was admitted by Mr. Scanlon that his present abode was with his girlfriend in a home that was mortgaged by his girlfriend and the girlfriend's aunt. His girlfriend's income was $270.00 a week net (R. 72a), and her aunt's income was calculated at a gross of an hourly rate of $5.00 per hour and that she worked a forty hour week with some occasional overtime. Mr. Scanlon testified that he contributed $230.00 a month for living expenses of the household.

The employer's certification of income showed stock received by Mr. Scanlon on March 31, 1980 of $3,112.00 gross for a net receipt of $2,378.00. (R. 54a). The value of the stock currently held in his name was approximately $5,300.00. (R. 92a).

Mr. Scanlon claimed that his expenses amounted to $925.00 per month.[3] However on cross-examination he testified that of these claimed expenses he had never actually paid the amount listed for food and utilities, amounting to $350.00 a month (R. 86a). Mr. Scanlon made it clear that in the future he wished to contribute more money to his new household. (R. 85a–86a).

> A. O.K. Right now, here is a check stub, my most recent one. This is—let me see—this is the support on there. That's what I'm bringing home. That's my gross. I have $145 a week take-home. My expenses, your Honor, are, you know, at a minimum of $740 and I'm making $620. That's $230 for rent and that's all I have. I have no other income. That's it in a nutshell.
> THE COURT: All right. Do you wish to cross examine, Mr. Rosen?
> [APPELLANT'S ATTORNEY]: Yes.
> These numbers do not coincide with the numbers on Mr. Scanlon's expense sheet which listed his expenses at $925.00 a month. The trial judge found that Mr. Scanlon was bringing home $384.00 a week and it is this amount we will use in our computations. The only pay stub on record is not clear as to the amount or the length of time covered.

**3.** This number is taken from the expense sheet on file. (R. 112a). This number does not correspond with his brief testimony. However, as the numbers in his testimony do not match any of the numbers in the written records, we will disregard the oral figures.

Mrs. Scanlon testified that Mr. Scanlon knew of her impending employment before he signed the agreement. (R. 93a). She began work the day after the house was sold as both parties had anticipated according to her uncontradicted testimony.

The lower court based its modification of the order on the fact that Mrs. Scanlon had begun to work full time. We cannot agree with the lower court's conclusion that Mr. Scanlon proved a change in circumstances such as to warrant a reduction of the order.[4]

■■■ We recognize that the role of an appellate court in support proceedings is limited; absent a clear abuse of discretion, we will defer to the order of the lower court. *Commonwealth ex rel. Vona v. Stickley*, 287 Pa.Superior Ct. 296, 430 A.2d 293 (1981).[5] "A finding of abuse is not

---

**4.** In this case, it is questionable whether Mr. Scanlon's petition should have been granted due to his failure to comply with the original support order. This court has held that under the rule of *Commonwealth ex rel. Goodwin v. Goodwin*, 413 Pa. 551, 198 A.2d 503 (1964), a party who flagrantly disobeys a support order may be denied a petition to reduce until such time as the arrearages are paid. *See Regli v. Regli*, 288 Pa.Superior Ct. 534, 432 A.2d 1000 (1981); *Commonwealth ex rel. Zercher v. Bankert*, 266 Pa.Superior Ct. 595, 405 A.2d 1266 (1979); *Commonwealth ex rel. Colligan v. Kass*, 225 Pa.Superior Ct. 299, 303 A.2d 225 (1973); *Commonwealth ex rel. Beemer v. Beemer*, 200 Pa.Superior Ct. 103, 188 A.2d 475 (1962). However, the mere existence of arrearages does not preclude a hearing on a petition to reduce. *See Banks v. Banks*, 275 Pa.Superior Ct. 439, 418 A.2d 1370 (1980); *Commonwealth ex rel. Fusco v. Fusco*, 247 Pa.Superior Ct. 413, 372 A.2d 893 (1977); *Commonwealth ex rel. Rickert v. Rickert*, 223 Pa.Superior Ct. 1, 296 A.2d 841 (1972). As long as there has been a good faith effort to comply with the order, the petition may be considered. *See Fusco, supra.* In this particular case, there is no evidence in the record concerning any effort of Mr. Scanlon to make the payments. Although the trial court considered the motion at the hearing, no mention of this matter was made in the opinion below. We are hesitant to reverse the trial judge on this issue without any evidence. Our disposition of the major issue in this case, *i.e.*, should the petition have been granted, renders any decision as to this issue unnecessary. If we had reached a different result on the second issue, a remand would have been necessary due to the silence of the record on this particular issue except through Mrs. Scanlon's argument.

**5.** *See also Costello v. Le Noir*, 462 Pa. 36, 337 A.2d 866 (1975); *Commonwealth ex rel. Kistler v. Kistler*, 291 Pa.Superior Ct. 51, 435 A.2d 214 (1981); *Commonwealth ex rel. Magaziner v. Magaziner*, 276

lightly made but only upon a showing of clear and convincing evidence." *Commonwealth ex rel. Caswell v. Caswell,* 280 Pa.Superior Ct. 359, 365, 421 A.2d 762, 765 (1980).[6]

> An abuse of discretion does not necessarily imply a willful abuse, but if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence or the record, discretion is then abused and it is the duty of the appellate court to correct the error. *Prescott v. Prescott,* 284 Pa.Superior Ct. 430, 435, 426 A.2d 123, 126 (1981).

*Commonwealth ex rel. Kistler v. Kistler,* 291 Pa.Superior Ct. 51, 435 A.2d 214 (1981) *clarified Commonwealth ex rel. Kistler v. Kistler,* 303 Pa.Superior Ct. 45, 449 A.2d 69 (1982). (emphasis omitted).

■■■■ When reviewing a petition for modification of a support order, the lower court must consider all pertinent facts and the court's decision must be based upon facts appearing in the record which indicate that the movant did or did not meet his or her burden of proof as to changed circumstances. *Commonwealth ex rel. Delbaugh v. Delbaugh,* 258 Pa.Superior Ct. 127, 130, 392 A.2d 717, 718 (1978).[7] Appellant has the burden of proving by competent evidence that a material and substantial change of circumstances had occurred since the entry of the original support order. *Commonwealth ex rel. Vona v. Stickley, supra; Commonwealth ex rel. Caswell v. Caswell, supra; Bell v. Bell,* 228 Pa.Superior Ct. 280, 323 A.2d 267 (1974).[8] A

Pa.Superior Ct. 169, 419 A.2d 149 (1980); *Commonwealth ex rel. ReDavid v. ReDavid,* 251 Pa.Superior Ct. 103, 380 A.2d 398 (1977).

**6.** *See also Commonwealth ex rel. Hartranft v. Hartranft,* 267 Pa.Superior Ct. 572, 574, 407 A.2d 389, 390 (1979); *Commonwealth ex rel. McQuiddy v. McQuiddy,* 238 Pa.Superior Ct. 390, 358 A.2d 102 (1976).

**7.** *See also, Commonwealth ex rel. Hall v. Hall,* 243 Pa.Superior Ct. 162, 163, 364 A.2d 500, 501 (1976); *Bell v. Bell,* 228 Pa.Superior Ct. 280, 283, 323 A.2d 267, 269 (1974); *Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa.Superior Ct. 144, 147, 239 A.2d 810, 812 (1968).

**8.** *See also Commonwealth ex rel. Delbaugh v. Delbaugh, supra; Commonwealth ex rel. Levy v. Levy,* 240 Pa.Superior Ct. 168, 361 A.2d 781 (1976).

petition to modify an order of support is not a substitute for an appeal and cannot bring up for review matters adjudicated in making the prior order. *Dunbar v. Dunbar,* 291 Pa.Superior Ct. 224, 435 A.2d 879 (1981). Thus, although a court is free to disregard an agreement between the parties for support of the children,[9] when the agreement adequately provides for the needs of the children and has been recently entered into under court approval, unless a change of circumstances can be shown, there is no justification for ignoring the agreement.

■ Of course, in any child support proceeding, the main concern is for the welfare of the child. Each parent has a duty which is "well nigh absolute" to support his or her minor children and each may have to make sacrifices in order to meet this burden.[10]

■ We are unable to conclude that Mr. Scanlon has carried his burden of proof. His one paragraph of testimony along with that later elicited through cross-examination and redirect indicates no material or substantial change in his financial circumstances. Therefore his argument that the order was too great cannot be given any merit when his own proof established only that his income had increased slightly.[11]

It is also uncontradicted but that Mr. Scanlon was aware that Mrs. Scanlon was to begin employment. Mrs. Scanlon testified as to this fact. (R. 93a–94a). The record also indicates that Mrs. Scanlon's employment began before the original order was finally entered.

9. *Commonwealth ex rel. Balph v. Balph,* 210 Pa.Superior Ct. 244, 232 A.2d 76 (1967); *Commonwealth ex rel. Snively v. Snively,* 206 Pa.Superior Ct. 278, 212 A.2d 905 (1965).

10. *See Kramer v. Kelly,* 265 Pa.Superior Ct. 58, 401 A.2d 799 (1979). *See also Dunbar v. Dunbar,* 291 Pa.Superior Ct. 224, 435 A.2d 879 (1981); *Commonwealth ex rel. Mickey v. Mickey,* 220 Pa.Superior Ct. 39, 280 A.2d 417 (1971); *Commonwealth ex rel. Snively v. Snively,* 206 Pa.Superior Ct. 278, 212 A.2d 905 (1965).

11. We have little sympathy for Mr. Scanlon and his wishes to contribute more to his new household. His own children should not suffer due to his new choice of lifestyle.

Our review of the record leads us to conclude that there was no change in circumstances such as to warrant a modification.[12] Although the reduction of a support order is largely within the trial court's discretion, there are no facts on the record to support the trial court's finding of a change in circumstances. Therefore, we reverse the ruling of the lower court and hold that Mr. Scanlon's petition to reduce be denied.[13]

---

**12.** *See Dunbar v. Dunbar, supra,* in which we reversed on similar grounds. *See also, Commonwealth ex rel. Kistler v. Kistler, supra; Brake v. Brake,* 271 Pa.Superior Ct. 314, 413 A.2d 422 (1979); *Commonwealth ex rel. Lyle v. Lyle,* 248 Pa.Superior Ct. 458, 375 A.2d 187 (1977); *Commonwealth ex rel. Levy v. Levy,* 240 Pa.Superior Ct. 168, 361 A.2d 781 (1976); *Commonwealth ex rel. Hall v. Hall,* 243 Pa.Superior Ct. 162, 364 A.2d 500 (1976); *Bell v. Bell,* 228 Pa.Superior Ct. 280, 323 A.2d 267 (1974).

**13.** Neither party contested the part of the order concerning the $10.00 a week in arrearages to be paid; therefore, that part of the order may stand.